UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL PARKS, | : | 1:15-CV-01514 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| S. ARGUETA, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.  Introduction.

The plaintiff, Darrell Parks, a federal prisoner proceeding *pro* se, began this *Bivens*[1] action by filing a complaint and an application to proceed *in forma pauperis.*  Although the complaint states some claims upon which relief may be granted against some defendants, it fails to state a claim upon which relief may be granted against other defendants.   It is recommend that Parks's claims for injunctive relief be dismissed as moot, that the claims against the defendants in their

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).   In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights.   "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001).

official capacities be dismissed because they are barred by sovereign immunity, and that the individual capacity claims against 10 of the 42 defendants be dismissed for failure to state a claim upon which relief may be granted.

## II.  Factual Background and Procedural History.

Parks is currently incarcerated at the Federal Correctional Institution in Beaumont, Texas.   His claims in this case, however, concern events that happened at the United States Penitentiary in Lewisburg, Pennsylvania.   Parks names the following 42 officers and officials from USP-Lewisburg as defendants:

(1) Corrections Officer Argueta; (2) Corrections Officer Crawford; (3) Corrections Officer Oldt; (4) Corrections Officer Hamilton; (5) Corrections Officer Carpenter; (6) Corrections Officer Pealer; (7) Corrections Officer Puckey; (8) Corrections Officer Vayda; (9) Corrections Officer Treibley; (10) Corrections Officer Finck; (11) Corrections Officer George; (12) Corrections Officer Condit; (13) Corrections Officer Bordell; (14) Corrections Officer Seagrave; (15) Corrections Officer Biger; (16) Lieutenant Miller; (17) Lieutenant Vargeson; (18) Lieutenant Seeba; (19) Lieutenant Dowkus; (20) Lieutenant Sherman; (21) Lieutenant Scott; (22) Lieutenant Knapp; (23) Lieutenant Stuart; (24) Lieutenant Johnson;

2

(25) Lieutenant Saylor; (26) Lieutenant Went; (27) John Does (Unknown) Special

Operations Response Team/Emergency Response Team; (28) Lieutenant Carper;

(29) Case Manager Berkoski; (30) Counselor Marr; (31) Counselor Shuck;

(32) Counselor Dilts; (33) Corrections Officer Mottern; (34) John Doe (Unknown)

Correction Lieutenant; (35) Clinical Registered Nurse Practictioner Trusal;

(36) Registered Nurse Brenneman; (37) Emergency Medical Technician Dees;

(38) Clinical Director/Medical Doctor Pigos; (39) Pharmacist Brown; (40) John Doe

(Unknown) Correction Lieutenant; (41) Discipline Hearing Officer Chambers; and

(42) Warden Thomas.   Parks asserts numerous claims in this complaint including

claims based on alleged use of excessive force, an inappropriate strip search, denial

of medical care, retaliation, and issuance of false misconduct reports.   He seeks

declaratory and injunctive relief as well as compensatory and punitive damages.

Parks was granted leave to proceed *in forma pauperis*, and the court screened

the complaint.   It was determined that the complaint failed to state a claim upon

which relief may be granted against 10 of the 42 defendants.   Parks was given leave

to file an amended complaint, but he has not filed an amended complaint.

## III.  Discussion.

### A. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se*

complaints brought by prisoners given leave to proceed *in forma pauperis* in cases

that seek redress against government officials.   Specifically, the court must review

the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent

part:

> **(a) Screening.—**The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.—**On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails

to state a claim upon which relief may be granted."   This statutory text mirrors the

language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

   "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).   The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).   "A complaint has to 'show' such an entitlement with its facts." *Id.*

   In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).   But a

court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal

6

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).   Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. The Claims for Injunctive and Declaratory Relief Are Moot.

Since Parks is no longer incarcerated at USP-Lewisburg, his claims for injunctive and declaratory relief are moot.

Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile*

*Male*, 131 S. Ct. 2860, 2864 (2011)(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).   "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)(quoting *Lewis,* 494 U.S. at 477).   "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013)(quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). Generally, an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief. *Sutton v. Rahseed,* 323 F.3d 236, 248 (3d Cir. 2003); *Johnson v. Wenerowicz,* 440 F. App'x. 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory relief against the named defendants was rendered moot by his transfer to another prison).

Since Parks is no longer at USP-Lewisburg and there is no basis alleged to reasonably believe that he will again be incarcerated at USP-Lewisburg in the foreseeable future, his claims for injunctive and declaratory relief relating to conditions and events at that institution are moot.

8

**C. The Claims Against the Defendants in their Official Capacities Are Barred by Sovereign Immunity.**

Parks sues some of the defendants in their official capacities as well as their personal capacities.   The claims against the defendants in their official capacities are barred by sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell,* 463 U.S. 206, 212 (1983).   "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55 (1978))**.**   Thus, claims against the defendants in their official capacities are really claims against the United States and, absent a waiver of sovereign immunity, which is not present in this case, are barred by sovereign immunity. *See Tucker v. Sec'y of Health & Human Servs.,* 588 F. App'x 110, 115 (3d Cir. 2014)("[A] *Bivens* action cannot be maintained against a federal official in her

official capacity since such an action would essentially be one against the United States.”).

### D. The Complaint Fails to Allege Personal Involvement on the Part of Defendants Shuck, Dilts, Chambers, and Vayda.

Liability in a *Bivens* action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.   In other words, defendants are “liable only for their own unconstitutional conduct.” *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015).   And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).

A supervisor may be liable for unconstitutional acts by his or her subordinates in two general ways: (1) the supervisor, “with deliberate indifference to the consequences, established and maintained a policy, practice or custody which directly caused [the] constitutional harm’”; or (2) the supervisor “participated in violating the plaintiff’s rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate’s unconstitutional conduct.” *Barkes,* 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

10

Parks names defendants Shuck, Dilts, and Chambers in the caption of his complaint and he identifies them in the body of his complaint as defendants, but he does not allege how these defendants were personally involved in any of the alleged violations of his constitutional rights.   Thus, the complaint fails to state a claim upon which relief may be granted against these defendants.

Similarly, Parks names defendant Vayda as a defendant in the caption of the complaint and in the section of the complaint that identifies the defendants.   In addition, in the section of the complaint listing his claims, Parks alleges in a conclusory manner that Vayda failed to intervene in the alleged use of unnecessarily tight restraints.   Parks does not, however, allege facts about where Vayda was when the restraints were used or what he or she observed about the restraints.   Thus, Parks has failed to allege how Vayda was personally involved in the alleged violation of his rights.   Accordingly, the complaint fails to state a claim upon which relief may be granted against Vayda.

11

**E. The Complaint Fails to State Due Process Claims Upon Which Relief May Be Granted Based on False Misconducts and Misconduct Proceedings.**

Parks alleges that the defendants issued him three false misconduct reports. He alleges that the misconduct reports violated due process.   In one instance, he also alleges that the misconduct report was issued in retaliation for his statement that he was going to file a grievance.   In the other two instances, however, he merely alleges that the misconducts were false and that he was not provided due process in connection with the disciplinary proceedings.   The complaint fails to state due process claims upon which relief may be granted based on the allegedly false misconduct reports.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."   A due process claim requires a two-part analysis.   First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause.   *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).   Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

12

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin,* 515 U.S. at 484).   In deciding whether a protected liberty interest exists under *Sandin,* the court considers the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003).   While *Sandin* addressed state-created liberty interests under the Fourteenth Amendment, its reasoning also applies to Fifth Amendment due process claims

13

brought by federal prisoners pursuant to *Bivens. Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996).

Parks has not alleged that as a result of the misconducts he lost good time credits.   Rather, he alleges only that he spent a short time in segregated custody as a result of the misconducts, 30 days in the longest instance.   With respect to one of the misconduct charges, he alleges that he was transferred to a Block where he was housed with another inmate in a cell that was only six by ten feet, where the cell door was covered, where there was lead paint hanging from the ceiling and pipes, where there was rust, mold, and fungus around the sink toilet, where dirt, dust, and lint constantly floated in the air, where the was no emergency/panic button, where the cells that were sprayed with mace or pepper spray were not decontaminated, where there were constant inmate-on-inmate fights, and where there were constant staff-on-inmate assaults.   With respect to the other two misconduct reports, however, Parks does not allege in what conditions he was held as a result of those reports.   With respect to these latter two misconduct reports, Parks has not alleged facts from which it can reasonably be inferred that he was subject to an atypical and significant hardship in relation to the ordinary incidents of prison life and, thus, he has not alleged facts from which it can reasonably be inferred that he had a liberty

14

interest protected by the Due Process Clause.   Accordingly, the complaint fails to state a due process claim upon which relief may be granted with respect to those two allegedly false misconduct reports.

Moreover, even assuming for the sake of argument, that Parks has sufficiently alleged that he had a liberty interest protected by the Due Process Clause, he has not alleged that he was denied the process that he was due in connection with any of the three misconduct reports.

Where a disciplinary proceeding may result in the loss of an interest protected by the Due Process Clause, a prisoner is entitled to certain procedural protections. *Campbell v. Holt,* 432 F. App'x. 49, 51 (3d Cir. 2011).   While "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," when a liberty interest is at stake in a prison disciplinary proceeding, a prisoner is entitled to the following procedural protections: (1) at least 24 hours advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action; (4) where a prisoner is illiterate or where the complexity of the issues make it

15

unlikely that the prisoner will be able to collect and present necessary evidence, the assistance of a fellow prisoner or a staff member; and (5) an impartial disciplinary tribunal. *Wolff v. McDonnell*, 418 U.S. 539, 556, 564-70 (1974); *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir. 1974).   Further, due process requires that there be some evidence to support the findings of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Although the issuance of a false misconduct report may support a retaliation claim, *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003), the issuance of a false misconduct report does not rise to the level of a due process violation when the inmate has been afforded the procedural protections required by *Wolff* and *Hill*. *Wilson v. Maben*, 676 F. Supp. 581, 584 (M.D. Pa. 1987).   Here, Parks has not alleged that he was denied any of the procedural protections required by *Wolff* and *Hill*.   Accordingly, his due process claims based on the issuance of the false misconduct reports fail.

Further, the complaint fails to state a due process claim upon which relief may be granted against the defendants who were alleged to have investigated, inadequately according to Parks, the misconduct charges because Parks does not have a due process "right to an adequate prehearing investigation." *Hatten v.*

16

*Bledsoe*, No. 1:CV-11-1904, 2012 WL 4747297, at *2 (M.D. Pa. Oct. 4, 2012); *Diaz v. McGuire,* 154 F. App'x 81, 85 (10th Cir. 2005)("An adequate prehearing investigation is not among the minimum due process protections identified by *Wolff* and *Hill*.")   Also, because Parks has not alleged that he was denied any of the protections required by *Wolff* and *Hill*, he fails to state a due process claim upon which relief may be granted against the defendants who were members of the Unit Discipline Committee and who conducted the disciplinary hearings.   Further, Parks fails to state a due process claim against Warden Thomas based on the denial of Parks's appeals from the disciplinary decisions. *See Hayes v. Walsh,* 3:11–CV–01739, 2012 WL 2462316 at *4 (M.D.Pa. June 27, 2012) (Caputo, J.)("[S]upervisory review and/or ratification of disciplinary misconduct determinations generally do not establish the supervisor's personal involvement in the deprivation of an inmate's constitutional rights.").

In sum, the complaint fails to state a due process claim upon which relief may be granted with respect to the purportedly false misconduct charges and the proceedings that followed those charges.   Such due process claims are the only claims in the complaint against defendants Went, Carper, Berkoski, Marr, Thomas,

and Mottern.   Accordingly, the complaint fails to state a claim upon which relief may be granted against these defendants.

### F. Parks Failed to File an Amended Complaint.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provision of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).   In light of the liberal-amendment requirement, Parks was granted leave to file an amended complaint.   Parks has not, however, filed an amended complaint and the deadline set for him to do so has expired.[2]

### IV. Recommendations.

Based on the foregoing, it is recommended that Parks's claims for injunctive relief be dismissed as moot, that the claims against the defendants in their official capacities be dismissed because they are barred by sovereign immunity, and that the individual capacity claims against defendants Shuck, Dilts, Chambers, Vayda,

---

[2] By an Order dated September 23, 2015, Parks was given 28 days to file an amended complaint.

Went, Carper, Berkoski, Marr, Thomas, and Mottern be dismissed.   It is further

recommended that the case be remanded to the undersigned for further proceedings.[3]


      The Parties are further placed on notice that pursuant to Local Rule 72.3:

      Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive

-------------------------

[3] By a separate Order, service on the remaining defendants has been ordered.

further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 29th day of October, 2015.


                              _**S/Susan E. Schwab**_
                              Susan E. Schwab
                              United States Magistrate Judge