## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL PARKS, | : | CIVIL NO: 1:15-CV-01514 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| S. ARGUETA, *et al*., | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Plaintiff Darrell Parks ("Parks"), a federal prisoner proceeding *pro se*,

initiated this *Bivens*[1] action by filing a complaint (*doc. 1*) and an application to

proceed *in forma pauperis*.[2]  Currently before the Court is the defendants' motion

(*doc. 20*) to dismiss for failure to state a claim and for summary judgment.  Despite

being repeatedly ordered to do so, Parks has not filed a brief in opposition to the

defendants' motion.  After analyzing the applicable factors, the Court concludes

---

[1]    *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971).  In *Bivens*, the Supreme Court recognized a private cause of
action to recover damages against a federal agent for violations of constitutional
rights.  "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] § 1983
cause of action against state actors, will lie where the defendant has violated the
plaintiff's rights under color of federal law."  *Brown v. Philip Morris Inc.,* 250
F.3d 789, 800 (3d Cir. 2001).
[2]    Parks's application to proceed *in forma pauperis* was granted on September
23, 2015.  *See doc. 6.*

that this case should be dismissed based on Parks's failure to prosecute the action. In the alternative, the Court recommends that the defendants' motion to dismiss and for summary judgment be granted.

## II.  Factual Background and Procedural History.

Parks's complaint, which he filed on August 4, 2015, raises claims pertaining to events that occurred between August 2013 and November 2013 while he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg," or "the Prison").  Parks's array of claims includes retaliation, sexual harassment, assault and battery, cruel and unusual punishment, excessive force, and inadequate medical care/deliberate indifference.  The complaint initially sought various forms of declaratory, injunctive, and monetary relief and named forty-two USP-Lewisburg officials as defendants in their individual and official capacities.

Pursuant to 28 U.S.C. § 1915A, the Court previously conducted a preliminary screening of Parks's complaint, and on October 29, 2015, the Court issued a report and recommendation ("R&R"), recommending that Parks's claims for injunctive relief be dismissed as moot,[3] that all claims against the defendants in

---

[3]     Because all of the defendants against whom Parks sought injunctive relief were officials at USP-Lewisburg, the Court determined that Parks's claims for injunctive relief were moot as he is no longer an inmate at SCI-Lewisburg.  *See doc. 9* at 7-8.

their official capacities be dismissed as they were barred by sovereign immunity,
and that the individual capacity claims against ten of the forty-two defendants be
dismissed for failure to state a claim upon which relief may be granted. *See doc. 9.*
On November 30, 2015, Judge Rambo adopted our R&R in full, effectively
dismissing with prejudice Parks's claims for injunctive relief, his official-capacity
claims against all defendants, and his individual-capacity claims against ten
defendants.[4]

Currently, the following thirty-two officers and officials from USP-
Lewisburg remain as named defendants in this action and are sued in their
individual capacities: (1) Corrections Officer S. Argueta ("Argueta");
(2) Corrections Officer T. Crawford ("Crawford"); (3) Corrections Officer J. Oldt
("Oldt"); (4) Corrections Officer R. Hamilton ("Hamilton"); (5) Corrections
Officer J. Carpenter ("Carpenter"); (6) Corrections Officer B. Pealer ("Pealer");
(7) Corrections Officer S. Puckey ("Puckey"); (8) Corrections Officer Joshua
Treibley ("Treibley"); (9) Corrections Officer J. Finck ("Finck"); (10) Corrections
Officer J. George ("George"); (11) Corrections Officer M. Condit ("Condit");

---

[4]     Pursuant to this Court's November 30, 2015, order, the following defendants
have been terminated from this action: (1) Corrections Officer J. Vayda; (2) Acting
Corrections Lieutenant B. Went; (3) Acting Corrections Lieutenant N. Carper;
(4) Case Manager C. Berkoski; (5) Corrections Counselor B. Marr; (6) Corrections
Counselor G. Shuck; (7) Corrections Counselor J. Dilts; (8) Corrections Officer B.
Mottern; (9) Discipline Hearing Officer B. Chambers; and (10) Warden J.E.
Thomas. *See doc. 14.*

(12) Corrections Officer T. Bordell ("Bordell"); (13) Corrections Officer Megan

Segraves ("Segraves");[5] (14) Corrections Officer D. Biger ("Biger");

(15) Corrections Lieutenant R. Miller, Jr. ("Miller"); (16) Corrections Lieutenant

G. Vargeson ("Vargeson"); (17) Corrections Officer J. Seeba ("Seeba");

(18) Corrections Lieutenant Dowkus ("Dowkus"); (19) Corrections Lieutenant J.

Sherman ("Sherman"); (20) Corrections Lieutenant A. Scott ("Scott");

(21) Corrections Lieutenant D. Knapp ("Knapp"); (22) Corrections Lieutenant E.

Stuart ("Stuart"); (23) Corrections Lieutenant R. Johnson ("Johnson");

(24) Corrections Lieutenant M. Saylor ("Saylor"); (25) John Does of the Special

Operations Response Team/Emergency Response Team ("the SORT");

(26) Unknown Corrections Lieutenant John Doe; (27) Unknown Corrections

Lieutenant John Doe 2; (28) Clinical Registered Nurse Practitioner Noel Trusal

("Trusal"); (29) Registered Nurse William Brenneman ("Brenneman"); (30) N.R.

Emergency Medical Technician Sarah Dees ("Dees"); (31) Medical

Doctor/Clinical Director Kevin Pigos ("Dr. Pigos"); and (32) Pharmacist Regina

Brown ("Brown").[6]

---

[5]     Although both Parks's complaint and the docket in this case refer to this
defendant as "M. Seagrave," she is referred to as "Megan Segraves" in the
defendants' pleadings and other documents filed with the Court.  Thus, the Court
chooses to address this defendant as "Segraves."

[6]     Parks also references an individual by the name of "D. Mink" or "Mink"
multiple times throughout his complaint.  Although no one by the name of Mink is
actually named as a defendant by Parks in this action, a psychologist by the name

On March 3, 2016, the remaining defendants in this action (except for the two unknown corrections lieutenants and the unknown members of the SORT) filed a motion (*doc. 20*) to dismiss for failure to state a claim and for summary judgment, and on March 16, 2016, the defendants filed a statement (*doc. 25*) of material facts ("SMF") and brief (*doc. 26*) in support of this motion.  On March 17, 2016, the Court issued an order (*doc. 29*) directing that Parks file, on or before April 11, 2016, a brief in opposition to the defendants' motion, a response to the defendants' SMF, and any other relevant documentation (hereinafter "the response materials").  On April 25, 2016, Parks filed a motion (*doc. 31*) for an extension of time to file the response materials, and the Court granted this motion on May 2, 2016, directing Parks to file the response materials on or before July 1, 2016.  *See doc. 33*.  Then, on July 6, 2016, Parks filed a motion (*doc. 35*) for a second extension of time to file the response materials, and the Court granted this motion on July 7, 2016, directing Parks to file the response materials on or before August 8, 2016.  *See doc. 36*.  Finally, on August 22, 2016, Parks filed a motion (*doc. 37*) for a third extension of time to file the response materials, and the Court granted this motion on August 23, 2016, directing Parks to file the response materials on or before October 7, 2016.  *See doc. 38*.  In the August 23, 2016, order granting Parks

---

of Danielle Mink is referenced in the defendants' motion to dismiss and for summary judgment.  *See doc. 20* at 1.  According to the defendants, to date Park has failed to effect proper service on Danielle Mink.  *See doc. 26* at 26.

his third extension of time, he was clearly informed that no further extensions of time would be granted. *Id.* The date of October 7, 2016, has long passed, and Parks has yet to file any materials in response to the defendants' motion to dismiss and for summary judgment.

## III. Discussion.

### A. Under the Rules of this Court, Parks Should be Deemed Not to Oppose the Defendants' Motion to Dismiss and for Summary Judgment.

At the outset, under the Local Rules of this Court, Parks should be deemed not to oppose the defendants' pending motion to dismiss and for summary judgment since he has failed to timely oppose the motion despite being granted three extensions of time to do so. Additionally, Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." At the time that he filed his complaint, Parks received a copy of the Court's Standing Practice Order, which set forth his obligations with respect to responding to a motion. *Doc. 5* at 2.

In this case, Parks has not complied with Local Rule 7.6 or this Court's repeated orders to file a brief in opposition to the defendants' motion. These procedural defaults compel us to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to

promote justice. *See* FED.R.CIV.P. 1.  Often that will mean that
courts should strive to resolve cases on their merits whenever
possible.  However, justice also requires that the merits of a
particular dispute be placed before the court in a timely fashion. .
. .

*Lease v. Fishel,* 712 F.Supp.2d 359, 371 (M.D.Pa. 2010) (quoting *McCurdy v.*

*American Bd. of Plastic Surgery,* 157 F.3d 191, 197 (3d Cir. 1998)).  The Court

further acknowledges a fundamental guiding tenet of our legal system, that failure

on our part to enforce compliance with the rules, and impose the sanctions

mandated by those rules when the rules are repeatedly breached, "would actually

violate the dual mandate which guides this court and motivates our system of

justice: 'that courts should strive to resolve cases on their merits whenever possible

[but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion.'"  *Id.*  Therefore, the Court is obliged to ensure

that one party's refusal to comply with the rules does not lead to an unjustified

prejudice to those parties who follow the rules.

Such sound principles of fairness apply here.  In this case, Parks failed to

comply with Local Rule 7.6; he failed to file a brief in opposition to the pending

motion to dismiss and for summary judgment despite being ordered to do so

multiple times, being granted three extensions of time, and being warned that the

most recent extension of time was the last one that he would be granted.  These

failures now compel us to deem Parks to not oppose the pending motion to dismiss and for summary judgment.

Nevertheless, Parks's failure to file a brief in opposition alone is not sufficient for the Court to dismiss the case.  In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court.  The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case.  *Id.* at 30.  It noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion.  *Id.*  It also noted: "Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked.  Thus, our holding is not broad."  *Id.* at 30.

Although this caveat from the *Stackhouse* case might suggest that the Court could grant the pending motion to dismiss based on Parks's failure to file a brief in opposition after being ordered to do so by the Court, the Third Circuit has subsequently declined "to adopt an interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff misses a briefing deadline set forth in a local rule or court-ordered briefing schedule."  *Hernandez v. Palakovich,* 293 F.App'x 890, 895 (3d Cir. 2008).  Rather, the Third Circuit has

held that before dismissing a case as a sanction for failure to follow a court rule or court order, a court must consider the factors set forth in the seminal *Poulis* case. *Id.* at 894 (citing *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984)); *see also Shuey v. Schwab,* 350 F.App'x 630, 633 (3d Cir. 2009) ("*Poulis* has been cited too often and is too deeply ingrained in the jurisprudence of this court and the district courts of this circuit for a court to assume that a party's failure to respond to a motion . . . can be regarded as an abandonment of the claim. *Poulis* governs the District Court's decision to dismiss the Shueys' claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, the Court turns to a consideration of the *Poulis* factors.

### B. Consideration of the *Poulis* Factors Warrants Dismissal of this Case or in the Alternative, the Defendants' Motion to Dismiss and for Summary Judgment Should be Granted.

If the plaintiff fails to prosecute a case or to comply with court rules or court orders, pursuant to Fed.R.Civ.P. 41(b), the Court may dismiss the action. Even though dismissal is an available sanction, it is a drastic sanction that "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp*., 677 F.2d 339, 342 (3d Cir. 1982). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir.

2002).  But that discretion, while broad, is governed by the following factors,

commonly referred to as the *Poulis* factors, which the Court must balance in

deciding whether to dismiss a case:

> (1) the extent of the party's personal responsibility; (2) the
> prejudice to the adversary caused by the failure to meet
> scheduling orders and respond to discovery; (3) a history of
> dilatoriness; (4) whether the conduct of the party or the attorney
> was willful or in bad faith; (5) the effectiveness of sanctions
> other than dismissal, which entails an analysis of alternative
> sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868.  No single factor is dispositive, *Briscoe v. Klaus*, 538 F.3d

252, 263 (3d Cir. 2008), and each factor need not be satisfied for the court to

dismiss an action, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003).  In

this case, an assessment of the *Poulis* factors weighs in favor of dismissing this

action.

### 1. Extent of the Party's Personal Responsibility.

The first *Poulis* factor is the extent of the party's personal responsibility.  A

*pro se* litigant is personally responsible for failure to comply with the Court's rules

and orders.  In this case, Parks is proceeding *pro se*, and so he is responsible for his

failure to file a brief in opposition to the defendants' pending motion to dismiss

and for summary judgment, as required by the Local Rule and as ordered by the

Court.  In sum, Parks is responsible for his failure to comply with the court rules

and court orders, and he is also responsible for his failure to litigate this case.

10

## 2. Prejudice to the Adversary.

The second *Poulis* factor is prejudice to the adversary.  Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).  Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm.  *Ware*, 322 F.3d at 322.  "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id*.  In this case, Parks's failure to litigate the case and comply with court rules and court orders frustrates and delays resolution of this action, and such failure to litigate can be seen to prejudice the defendants, who seek a timely resolution of the case.

## 3. History of Dilatoriness.

The third *Poulis* factor is a history of dilatoriness.  While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe*, 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. Of N.J. Brewery Emps. Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994).  A "party's problematic acts must be evaluated in light of [his or her] behavior over the life of

11

the case." *Id*. at 875.  In this case, Parks has a history of dilatoriness.  In an order

issued on March 17, 2016, approximately eight months ago, the Court directed

Parks to file a brief in opposition to the defendants' motion by April 11, 2016.

Since April 25, 2016, he has requested three extensions of time to file his

opposition brief, all which have been granted.  In the order granting Parks his third

(most recent) extension of time, the Court directed him to file an opposition brief

by a deadline of October 7, 2016, and warned him that he would be granted no

further extensions of time.  More than a month has elapsed since the October 7,

2016 deadline, and he has yet to file a brief in opposition to the defendants'

motion.  Given that Parks still has not filed an opposition brief despite being

granted three time extensions and being warned that his most recent time extension

was his last, the Court concludes that Parks has a history of dilatoriness.  *See, e.g.*,

*Santos v. Caudle*, No. 3:10-cv-1767, 2012 WL 4756654, at *6 (M.D. Pa. Oct. 5,

2012) (finding that the plaintiff had a history of dilatoriness . . . when the "Court

ha[d] granted two (2) extensions of time; but, Plaintiff ha[d] still failed to file an

opposition brief [in response to defendants' motion to dismiss and for summary

judgment]."); *Murray v. Stickman*, No. 03-297, 2006 WL 752969, at *3 (W.D. Pa.

Mar. 17, 2006) (finding dilatoriness in the *Poulis* context when a plaintiff "ignored

numerous orders and deadlines . . . despite being given a number of extensions of

time").

### 4. Willfulness or Bad Faith.

The fourth *Poulis* factor is whether the conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875.  Here, Parks's conduct is willful.  Since April 25, 2016, he has filed three motions for extensions of time, and yet in the same time period, he has failed to file a brief in opposition to the defendants' motion.  Since he has filed motions for time extensions and, thus, is aware of his obligation to file an opposition brief, his failure to file an opposition brief should be deemed willful and "cannot be attributed to mere negligent missteps by a *pro se* litigant."  *See, e.g.*, *Murray*, 2006 WL 752969, at *3 (holding that when the plaintiff ignored various orders and deadlines despite being granted multiple time extensions, "this conduct [could not] be attributed to mere negligent missteps by a *pro se* litigant."); *Santos*, 2012 WL 4756654, at *6 ("[I]n light of the fact that Plaintiff has filed several other motions and briefs in the time period that his opposition brief was due, the Court finds that Plaintiff's decision not to file a brief in opposition to Defendants' motion to dismiss and for summary judgment is willful.").

### 5. Effectiveness of Alternate Sanctions.

The fifth *Poulis* factor is the effectiveness of alternate sanctions.  Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal.  *Poulis,* 747 F.2d at

868.  Parks is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Therefore, monetary sanctions, including attorney's fees and costs, would not be an effective sanction in this case.  Moreover, Parks's failure to comply with the Court's orders leads to an inference that further orders to him would not be effective.  In this case, no sanction short of dismissal would be effective.

### 6. Meritoriousness of the Claim.

The sixth *Poulis* factor is the meritoriousness of the claim.  In this inquiry, a claim will be deemed meritorious when the allegations of the complaint, if established at trial, would support recovery.  *Poulis,* 747 F.2d at 870.  The sixth *Poulis* factor weighs in favor of dismissing Parks's claim.

It is not necessary to partake in a lengthy discussion of the meritoriousness of most of Parks's claims because in moving for summary judgment, the defendants have presented evidence that Parks failed to exhaust administrative remedies for many of his claims.

### a. Exhaustion of Parks's Claims.

The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions. The Act provides:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a

14

> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  "Requiring exhaustion allows prison officials an

opportunity to resolve disputes concerning the exercise of their responsibilities

before being haled into court."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  "This

has the potential to reduce the number of inmate suits, and also to improve the

quality of suits that are filed by producing a useful administrative record."  *Id.*

Thus, the benefits of the exhaustion requirement "include allowing a prison to

address complaints about the program it administers before being subjected to suit,

reducing litigation to the extent complaints are satisfactorily resolved, and

improving litigation that does occur by leading to the preparation of a useful

record."  *Id.* at 219.  While the exhaustion requirement serves to alert prison

officials to a problem, "notice to those who might later be sued . . . has not been

thought to be one of the leading purposes of the exhaustion requirement."  *Id.*

In accordance with § 1997e(a), the exhaustion of available administrative

remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the

"exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A prisoner must "exhaust all available administrative remedies" regardless of

whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id; see also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

"Under the PLRA, exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). It is a

'"threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).  There is no right to have a jury decide the issue of exhaustion.  *Id.* at 271.  Rather, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts."  *Id.* at 269.

Defendants concede that Parks has exhausted his administrative remedies with respect to his claim that he was denied mental health treatment.  As to all of Parks's other claims, however, defendants argue that they are entitled to summary judgment because Parks failed to exhaust available administrative remedies as to those claims.

With respect to their motion for summary judgment, the defendants assert the following undisputed material facts with respect to Parks's failure to exhaust many of his remedies.[7]  According to the defendants, since Parks has been

---

[7]     A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the moving party means that those facts are deemed admitted.  Here, the defendants filed a statement of material facts (*doc. 25*) in support of their motion for summary judgment.  Because Parks has failed to file any materials in response to defendants' motion despite being granted three

incarcerated with the Federal Bureau of Prisons ("BOP"), he has filed over four hundred administrative remedies.  *Doc. 25* at ¶ 7; *doc. 25-1* at 4.  From June 21, 2013, the date of the earliest allegation in Parks's complaint, until his instant complaint was filed on August 4, 2015, he filed a total of fifty-five administrative remedies, twelve of which were exhausted.  *Doc. 25* at ¶¶ 8-9; *doc. 25-1* at 4.

Of the twelve remedies exhausted in this time period, seven concern matters outside of the claims made in Parks's complaint, while five of the exhausted remedies are potentially pertinent to the instant lawsuit.  *See doc. 25* at ¶¶ 11-12; *doc. 25-1* at 4.  The five exhausted administrative remedies potentially relevant to his claims for inadequate medical care/deliberate indifference: Remedy ID Numbers ("RIN") 730368, 764288, 770113, 773880, and 793951.  *Doc. 25* at ¶ 11; *doc. 25-1* at 4.  RIN 730368, which was filed by Parks on April 15, 2013, alleged that Health Services and Psychology staff were indifferent to Parks's mental health needs; this claim, however, pre-dated the allegations contained within Parks's instant complaint.  *Doc. 25* at ¶ 13; *doc. 25-1* at 4, 47-54.  In RIN 764288, Parks complained about what he perceived to be inadequate treatment of his sarcoidosis condition.  *Doc. 25* at ¶ 14; *doc. 25-1* at 4, 55-62.  RIN 770113 pertained to Parks's request for pain medication and alleged that Dr. Pigos denied him pain medication,

_____

extensions of time to do so, the Court considers the properly supported facts set forth by the defendants to be undisputed and deems them admitted for purposes of their motion for summary judgment.

but it made no mention of Brown, the prison's pharmacist. *Doc 25*. at ¶¶ 15-16; *doc. 25-1* at 4, 63-70.  RIN 773880, which was filed on June 15, 2014, concerned Parks's request for psychotropic medication and a consultation with a psychiatrist. *Doc. 25* at ¶ 17; *doc. 25-1* at 5, 71-77.  Finally, RIN 793951 concerned a staff member not named in the instant litigation and allegations that he failed to properly dispense medication for the treatment of Parks's sarcoidosis. *Doc. 25* at ¶ 18; *doc. 25-1* at 5, 78-86.[8]

Despite defendants' contention that Parks failed to exhaust his administrative remedies for any of his potential claims except for the allegation that he was denied mental health treatment, three of the five exhausted grievances refer to health issues other than his mental conditions and are potentially relevant

---

[8]   Of the remaining unexhausted remedies filed during the time period of June 21, 2015 to August 4, 2015, several appear to concern the instant litigation, but Parks failed to exhaust them. *Doc. 25 at* ¶ 19; *doc. 25-1* at 5.  For example, Parks filed RIN 747668 claiming that prison staff was indifferent to his medical needs, but he failed to timely appeal this claim to the Regional Office level.  *Doc. 25* at ¶ 20; *doc. 25-1* at 5, 22, 26-28.  RIN 750278 concerned a complaint against Health Services staff, but it was rejected because Parks failed to first file it at the institution level.  *Doc. 25* at ¶ 21; *doc. 25-1* at 5, 24.  RIN 766047 alleged unprofessional conduct by staff but was never appealed to the Regional Office or Central Office levels.  *Doc. 25* at ¶ 22, *doc. 25-1* at 5, 31-46.  RIN 768286 requested a pain medication but was rejected for failing to first attempt informal resolution.  *Doc. 25* at ¶ 24; *doc. 25-1* at 5, 33-46.  Finally, RIN 784308, which concerned a complaint about prison staff, was filed and rejected by the regional office on June 23, 2014, because Parks failed to first file it at the institution level. *Doc. 25* at ¶ 25; *doc. 25-1* at 36.  RIN 784308 was subsequently rejected in a similar manner by the Central Office on August 25, 2014.  *Doc. 25* at ¶ 26; *doc. 25-1* at 5, 38.

to his medical-care claim.[9]  RIN 773880 involved Parks's request for mental health medication and a consultation with a psychiatrist.  RIN 764288 and RIN 770113, however, involved health complaints other than Parks's mental health issues.  Specifically, RIN 764288 involved a complaint by Parks that prison staff failed to adequately treat his sarcoidosis condition, while RIN 770113 involved an allegation by Parks that Dr. Pigos denied him medication to alleviate severe pain caused by the sarcoidosis.  Thus, Parks's claim that he was denied mental health treatment is not the only claim he exhausted.  In fact, it appears that he also exhausted claims pertaining to the alleged inadequate treatment of his sarcoidosis and the pain stemming therefrom.  Thus, with respect to Parks's claims pertaining to his mental health and sarcoidosis, the issue of exhaustion in itself would not justify summary judgment for the defendants with respect to these claims.

The Court does agree with the defendants, however, that the undisputed evidence establishes that Parks failed to exhaust administrative remedies as to his retaliation, sexual harassment, and excessive-force claims.  The defendants provide evidence that the only claims exhausted by Parks within the time frame relevant to his complaint pertained to his treatment for his mental health and his sarcoidosis condition.  While Parks has brought various grievances generally alleging

---

[9]     By contrast, RIN 730368 is not relevant because it was filed on April 15, 2013, a date prior to the allegations in Parks's instant complaint, and RIN 793951 is not relevant because it involved a prison staff member who is not named as a defendant in the instant litigation.

unprofessional staff conduct, the defendants have provided evidence that these claims were not exhausted, and Parks fails to present any evidence to the contrary. Thus, the undisputed evidence establishes that Parks failed to exhaust available administrative remedies as to potential retaliation, sexual harassment, and excessive-force claims;[10] consequently, the defendants would be entitled to summary judgment with respect to these claims on the basis of Parks's failure to exhuast.[11]

### b. Meritoriousness of Claims Pertaining to Parks's Mental Health and Sarcoidosis Allegations.

Given our previous discussion of exhaustion, the only claims that warrant a discussion on the merits with respect to the sixth *Poulis* factor are those pertaining to Parks's mental health and those pertaining to his sarcoidosis.  An analysis of the sixth *Poulis* factor generally warrants an examination of the facts alleged in a plaintiff's complaint.  Here, however, in spite of the allegations contained within Parks's complaint, the defendants have filed an SMF to accompany their motion for summary judgment.  As previously explained, since Parks has failed to file any materials in response to defendants' motion despite being granted three extensions

---

[10]    Parks's complaint also suggested assault and battery as a cause of action, but there is no evidence to suggest that he exhausted administrative remedies with respect to this cause of action either.

[11]    In the alternative, the defendants would be entitled to a dismissal of these claims for failure to state a claim upon which relief may be granted.

of time to do so, the Court considers the properly supported facts set forth by the defendants in the SMF to be undisputed and deem them admitted for purposes of their summary judgment motion.

As it pertains to Parks's mental health, the SMF provides that when Parks first arrived at USP-Lewisburg on September 19, 2011, he was assigned level II mental health care due to a history of Bipolar Disorder. *Doc. 25* at ¶ 106; *doc. 25-3* at 3. Parks's mental-health record, however, also illustrated a long history of feigning mental illness for secondary gain. *Doc. 25* at ¶ 106; *doc. 25-3* at 3. In a note from August 12, 2013, Psychology Services staff noted that "Parks has not demonstrated any symptoms consistent with an Axis I mental illness" and that Parks often presented as "entitled and demanding." *Doc. 25* at ¶ 107; *doc. 25-3* at 3, 50. Because of this, Parks was downgraded to level I mental health care and was diagnosed with Malingering and Antisocial Personality Disorder. *Doc. 25* at ¶ 108; *doc. 25-3* at 3, 50. Parks was prescribed Venlafaxine (generic for Effexor) for depression and Gabapentin for neuropathic pain. *Doc. 25* at ¶¶ 110-111; *doc. 25-3* at 3, 52. Because both of these medications can cause a euphoric effect and, thus, have an increased potential for abuse, they were administered to inmates via Health Services personnel on a pill line to ensure that the inmate immediately swallowed the pill rather than stockpiling it to later get "high" or sell it to other inmates. *Doc. 25* at ¶¶ 112-113; *doc. 25-3* at 3, 52. As such, Parks should not

have had any such medication stored in his cell, but on November 8, 2013, a

Venlafaxine pill was found in Parks's possession during a random cell search.

*Doc. 25* at ¶¶ 109, 114; *doc. 25-3* at 3, 52.  After the pill was found in his cell,

Parks's pill-line medication was placed on hold pending review by a physician.

*Doc. 25* at ¶ 114; *doc. 25-3* at 3, 52.  Based on a review of Parks's records and a

familiarity with his medical history, Dr. Pigos elected to discontinue Parks's

Venlafaxine and Gabapentin.  *Doc. 25* at ¶ 115; *doc. 25-3* at 3.  Dr. Pigos found

that Parks's mental health diagnosis no longer required treatment with

psychotropic medication, and, therefore, that there was no clinical reason to

continue the Venlafaxine or to prescribe an alternate antidepressant.  *Doc. 25* at

¶ 116; *doc. 25-3* at 3.  Nonetheless, Health Services staff continued to monitor

Parks's mental health needs, he was evaluated by Psychology Services staff every

thirty days while in the SMU, and he had access to psychology staff during weekly

rounds and on an as needed basis.  *Id*. at ¶¶ 117-118; *doc. 25-3* at 3.

With respect to Parks's sarcoidosis, the SMF provides that Parks has been

diagnosed with a condition called pulmonary sarcoidosis, which is the growth of

tiny collections of inflammatory cells, or lesions, in different parts of the body,

most commonly the lungs, lymph nodes, eyes, and skin.  *Doc. 25* at ¶ 119; *doc. 25-3* at 3.  Defendants contend that Parks's sarcoidosis is likely the source of the

serious pain to which Parks refers in his complaint.  *Doc. 25* at ¶ 120; *doc. 25-3* at

3.  Parks's treatment for this condition has been hindered by his refusal to follow physician recommendations and non-compliance with medication.  *Doc. 25* at ¶ 121; *doc. 25-3* at 3.  On August 21, 2013, Parks began treatment with Methotrexate after finding that previous therapies provided little or no relief for his sarcoidosis.  *Doc. 25* at ¶ 122; *doc. 25-3* at 3, 56-60.  When the Methotrexate treatment began, he was advised that such treatment would require routine labwork.  *Doc. 25* at ¶ 123; *doc. 25-3* at 3, 56-60.  He refused, however, to submit to bloodwork, and because of this, his prescription for Methotrexate was discontinued on January 6, 2014.  *Doc. 25* at ¶ 124; *doc. 25-3* at 61-64.  Subsequently, though, on January 21, 2014, he was placed back on Methotrexate after he agreed to comply with the labwork required by the treatment, and he remained on that medication while housed at USP-Lewisburg.  *Doc. 25* at ¶¶ 125-126; *doc. 25-3* at 65-69.

In addition to the Methotrexate, Parks was given various additional prescriptions to relieve the pain associated with his sarcoidosis.  *Doc. 25* at ¶ 127; *doc. 25-3* at 4.  On May 2, 2014, he was prescribed a three-day course of Acetaminophen with Codeine.  *Doc. 25* at ¶ 128; *doc. 25-3* at 4, 71.  On May 7, 2014, Dr. Pigos prescribed Prednisone to treat pain from penile lesions from which Parks was suffering as a result of his sarcoidosis.  *Doc. 25* at ¶ 129; *doc. 25-3* at 4, 73.  On May 9, 2014, Parks was prescribed with a ten-day course of 325mg

24

Acetaminophen, but Parks returned this medication to the pharmacy and refused to take it. *Doc. 25* at ¶ 130; *doc. 25-3* at 4, 71. On May 13, 2014, Dr. Pigos prescribed a course of 600mg Ibuprofen, which Parks took until August 25, 2014. *Doc. 25* at ¶ 131; *doc. 25-3* at 4, 72. On July 14, 2014, Dr. Pigos prescribed a ninety-day course of Amitriptyline, and on August 19, 2014, the Amitriptyline dosage was increased in response to Parks's complaints of pain. *Doc. 25* at ¶ 132; *doc. 25-3* at 4, 71. Also, from November 8, 2013, until he was transferred out of USP-Lewisburg in December 2014, Parks was prescribed approximately seven different ointments and creams to control lesions and provide relief for his sarcoidosis-related pain. *Doc. 25* at ¶ 133; *doc. 25-3* at 4. Furthermore, Parks had access to various over-the-counter pain relievers through the inmate commissary, and he could have obtained such medications even if he were indigent. *Doc. 25* at ¶ 134; *doc. 25-3* at 4.

Parks's claims associated with his mental health and sarcoidosis treatment can be construed as Eighth Amendment medical-care claims. In order for a plaintiff to establish an Eighth Amendment medical-care claim, he must establish that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Groman v. Twp. of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that

failure rises to the level of deliberate indifference to that person's serious medical needs."). Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose . . . violates the Eighth Amendment." *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a

constitutional claim because medical malpractice is not a constitutional violation.

*See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted).  Furthermore, if a plaintiff's claims amount to a simple disagreement with medical officials as to the course of treatment, this does not amount to deliberate indifference.  *See Douglas v. Hill*, 1996 WL 716278, at *7 (E.D. Pa. Dec. 6, 1996) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)).

The undisputed facts provided in the defendants' SMF establish that the conduct of the prison officials did not rise to the level of deliberate indifference to Parks's medical needs with respect to either his mental health concerns or his sarcoidosis.  With respect to Parks's mental health concerns, although Parks's level of mental health care was downgraded on a series of occasions, he was never

denied mental health care completely, and to the extent he took issue with the downgrade of his classification, this would amount to a mere disagreement with medical officials as to his course of treatment which would not amount to deliberate indifference.  The same reasoning applies to Parks's disagreement with Dr. Pigos's decision to discontinue Parks's Venlafaxine and Gabapentin.  The decision to discontinue the medications was not arbitrary, was based on a review of Parks's records and a familiarity with Parks's medical history, and came after Parks was found to be concealing a Venlafaxine pill within his cell in violation of prison protocol.  Furthermore, even after these two medications were discontinued, Parks continued to receive treatment for his mental health concerns, as Health Services staff continued to monitor him, he was evaluated by Psychology Services every thrity days, and he had access to psychology staff on an as needed basis.

The facts contained within the SMF also establish that prison officials did not act with deliberate indifference with respect to Parks's sarcoidosis and the pain caused therefrom.  Prison staff attempted to treat Parks's sarcoidosis pain with Methotrexate, and although this medication was discontinued for a short period of time (January 6, 2014 through January 21, 2014), this was solely due to Parks's refusal to submit to requisite bloodwork.  Once Parks agreed to submit to the necessary bloodwork, he was placed back on the Methotrexate.  Furthermore, Parks was prescribed a multitude of additional painkillers to treat his sarcoidosis-

associated pain, as well as seven different prescription ointments and creams, and he had access to various over-the-counter pain remedies through the prison's commissary as well.  To the extent Parks disagreed with the prescription of any of these medications, this does not rise to the level of deliberate indifference.

Given that the conduct of prison staff did not rise to the level of deliberate indifference, Parks's Eighth Amendment medical-care claim fails to state a claim upon which relief can be granted.

In sum, all of the *Poulis* factors weigh in favor of dismissal.[12]  Moreover, Parks has failed to file a brief in opposition to the pending motion to dismiss and for summary judgment in spite of being ordered to do so a number of times, being granted three extensions of time, and being warned that the most recent extension of time was the last one that he would be granted.  Thus, it is recommend that the case be dismissed pursuant to Fed.R.Civ.P. 41(b) and the *Poulis* factors.  In the alternative, for the reasons set forth above, it is recommended that the Court grant the defendants' pending motion to dismiss and for summary judgment.

---

[12]    The defendants assert additional reasons for dismissal of Parks's complaint and for dismissal of individual defendants from this action, but on account of the determination that the complaint should be dismissed for the above reasons, those additional arguments need not be addressed.

## IV. Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the Court dismiss this action in accordance with Fed.R.Civ.P. 41(b) or, in the alternative, grant the defendants' motion (*doc. 20*) to dismiss and for summary judgment.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **5th** day of **December 2016**.


*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge